1

2

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

3

4

JOSE FERNANDO RODRIGUEZ-ORTIZ

   Plaintiff

5

        v.                                              **CIVIL NO. 03-2128 (PG)**

6

MARGO CARIBE, INC., et. al.

7

   Defendants

8

9

**REPORT AND RECOMMENDATION**

10

        This case is an action seeking compensatory damages for alleged violations to the Employee

11

Retirement Income Security Act (ERISA),[1] the Consolidated Omnibus Budget Reconciliation Act

12

of 1985 (COBRA),[2] Sections 10(b) and 20(a) of the Securities and Exchange Act of 1934 (the

13

Exchange Act)[3] and Securities and Exchange Commission Rule 10b-5.[4]  This action commenced

14

with the filing of a complaint on October 20, 2003.  Thereafter, a series of amended complaints,

15

corresponding motions for extension of time and answers were timely filed and appropriately

16

granted.[5]  The co-defendants now challenge the plaintiff's claims by jointly filing a motion to

17

dismiss pursuant to Rule 12(b)(6) and alternatively under Rule 12(b)(1) of the Federal Rules of Civil

18

Procedure based on plaintiff's failure to state a claim for which relief can be granted and lack of

19

subject matter jurisdiction.  See Docket No. 42.  For the foregoing reasons this Court concludes that

20

co-defendants' motion must be **DENIED**.

21

---

22

        [1]  29 U.S.C. § 502.

23

        [2]  29 U.S.C. § 502. (C)(1)(A).  The provisions set out in COBRA are amendments to ERISA.

24

        [3]  15 U.S.C. §§ 78j(b) and 78t(a)

25

        [4]  17 CFR § 240.10b-5.  This provision is the underlying promulgated rule of the 1934

26

Securities and Exchange Act.

27

        [5] The Second Amended Complaint served on co-defendant Margo Caribe, Inc. constitutes
the first Complaint against co-defendant Michael J. Spector, Chief Executive Officer of Margo.

28

However, hereinafter, for purposes of clarity, the document will be referred to as the "Second
Amended Complaint."

**CIVIL NO. 03-2128 (PG)**                    2

## I. Facts

The transactions most central to this case arise out of a series of events relating to the discontinuation of employment of plaintiff José Fernando Rodríguez Ortíz as President and Chief Operations Officer of codefendant Margo Caribe, Inc. (Margo).  Plaintiff alleges that he tendered his resignation on September 12, 2003 in reliance of his right to exercise a Stock Option Agreement (SOA) granted to him pursuant to a 1998 employment contract (the 1998 Plan) negotiated with co-defendant Margo.  Plaintiff also alleges co-defendants never intended to honor the SOA.  Co-defendants, contrariwise, allege that Rodríguez was asked to terminate his employment.  Co-defendants further submit that voluntary resignation by the plaintiff was a condition precedent to the triggering of the SOA.

More specifically, plaintiff avers that on November 14, 2003 co-defendants' intent not to honor the SOA, which arguably had fully vested upon Rodríguez's resignation, became evident when defendants issued a press release on the above mentioned date "[i]nforming shareholders and the public, that Rodríguez had been dismissed on August 29, 2003."  See Amended Complaint at ¶ 35.  Plaintiff also avers that on the above date he was also informed by defendants that he was considered terminated for purposes of the SOA, and that Margo misrepresented that it had the discretion to interpret the terms of the 1998 Plan.  Furthermore, plaintiff alleges that on or about December 5, 2003, he was informed that Margo's Compensation Committee had final and binding authority to treat his resignation as an involuntary termination despite the allegedly clear and unambiguous language of the SOA.[6]

In response to the above factual allegations, co-defendants filed the instant motion attempting to demonstrate that (1) the federal securities fraud allegation is groundless in that it has not been properly alleged nor has there been any fraud "in connection with" the "sale of purchase of a security", (2) the jurisdictional basis under COBRA, as alleged, is moot and should be dismissed,

---

[6] Referring to §5 of the SOA which guarantees a set of rights in the event of employee resignation with or without the consent of Margo.

**CIVIL NO. 03-2128 (PG)**                     3

and, (3) plaintiff has attempted to raise a federal question out of an essentially local contract lawsuit, thereby justifying dismissal of both federal and supplemental claims.

## II. Standard of Review

In a jurisdictional challenge, "the standard applied to a 12(b)(1) motion is similar to the standard applied to a 12(b)(6) motion, namely, the Court must take all of plaintiff's allegations as true and must view them along with reasonable inferences therefrom, in the light most favorable to the plaintiff". Pejepscot Indus. Park v. Maine Cent. R.R., 215 F. 3d 195, 197 (1st Cir. 2000); Freiburger v. Emery Air Charter, Inc., 795 F. Supp. 253, 257 (N.D.III.1992); Hart v. Mazur, 903 F. Supp. 277, 279 (D.R.I. 1995) (motions under Rule 12(b)(1) and Rule 12(b)(6) reviewed under same standard). Once the challenge has been raised, however, the plaintiff carries the burden of demonstrating the existence of the Court's jurisdiction. Puerto Rico Te. v. Telecom. Regulatory Bd., 189 F. 3d 1, 7(1st Cir. 1999).

When assessing whether dismissal is appropriate, "the trial court must accept as true the well-pleaded factual allegations of the complaint, draw all reasonable inferences in the plaintiff's favor, and determine whether the complaint, so read, limns facts sufficient to justify recovery on any cognizable theory". La Chapelle v. Berkshire Life Ins. Co., 142 F. 3d 507, 508 (1st Cir. 1998) (citations omitted). Although this standard is diaphanous, it is not a virtual mirage. Berner v. Delahanty, 129 F. 3d 20, 25 (1st Cir. 1997) (citing Gooley v. Mobil Oil Corp., 851 F. 2d 513, 515 (1st Cir. 1998)). In order to survive a motion to dismiss, "a complaint must set forth 'factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." Id. Moreover, when judging a complaint's sufficiency, courts must "differentiate between well-pleaded facts, on one hand, and 'bald assertions, unsupportable conclusions, periphrastic circumlocution, and the like,' on the other hand; the former must be credited, but the latter can safely be ignored." La Chapelle, 142 F. 3d at 508; Rogan v. Menino, 175 F. 3d 75, 77 (1st Cir. 1999). Further, the reviewing court should "not accept a complainant's unsupported conclusions or interpretations of law." Wash. Legal Found v. Mass. Bar

**CIVIL NO. 03-2128 (PG)**                    4

Found., 993 F. 2d 962, 971 (1st Cir. 1993).[7]

### III. Analysis

The first question for this Court to decide is whether jurisdiction is lacking because plaintiff has not sufficiently pleaded an allegation of fraud. Under § 10(b) of the Exchange Act and Rule 10b-5, in order to establish fraud the plaintiff has the burden of alleging and establishing that defendants made (1) a "materially false or misleading statement" (2) "in connection with" (3) the "sale or purchase of a security"[8] (4) with the "intent to deceive, manipulate, or defraud."

Misrepresentations must be material to trigger liability under § 10(b). See 17 C.F.R. 240.10b-5(b). A misrepresentation is material if a reasonable person would attach importance to the fact misrepresented in determining his course of action with respect to the transaction. See Basic

---

[7] In order to sufficiently allege securities fraud, a plaintiff must comply with the pleading standards of Fed.R.Civ.P. 9(b), which requires a plaintiff to state with particularity the circumstances constituting the alleged fraud. The plaintiff must also comply with the Private Securities Litigation Reform Act of 1995 (PSLRA), which was created to eliminate meritless class actions that allege fraud in the sale of securities. Spielman v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 332 F. 3d 116 (2nd Cir. 2003). It should also be noted that the PSLRA also applies to non-class action suits. See Newby v. Enron Corp., 338 F.3d 467, 472 (5th Cir. 2003). In considering the above noted standard, defendants' argument that the plaintiff has not met the heightened pleading standard as set out by the provisions above, though well argued, is without merit. In plaintiff's complaint, as well as in other pleadings on file, he continually cites to specifics with respect to allegations of fraud, as well as corresponding persons, places, documents, and time frames.

[8] The issue of law as to whether a Stock Option in the plaintiff's separation agreement is a security for purposes of Section 10(b) of the Exchange Act will certainly have to be resolved in this litigation. However, the Supreme Court in Warf Holdings Limited v. United International Holdings, Inc., 532 U.S. 588, 593 (2001) held that the court must assume that the "security" at issue is not always the stock or the value of the stock itself but "the option to purchase that stock". The Court alluded to the language of the Exchange Act citing "[t]hat [the] concession is consistent with the Act's language defining 'security' to include both 'any...option...on any security' and 'any right to purchase' stock. Id.. Moreover, in SEC v. Zandford, 535 U.S. 813 (2002), the Court reiterated that it has never held that there must be a misrepresentation about the value of a particular security in order to run afoul of the [Exchange] Act." It further stated that Section 10(b) must "be read flexibly, not technically and restrictively". Id. at 820. More so, this Court understands that the ultimate decision as to whether the plaintiff's SOA is a "security" will be a fact-ridden one. However, for purposes of the present motion to dismiss, the Court must draw all reasonable inferences in the plaintiff's favor.

**CIVIL NO. 03-2128 (PG)**                                    5

Inc. v. Levinson, 485 U.S. 224, 238 (1988).  Misrepresentations of one's intention to honor one's

promise under an option or other contract unquestionably is material, because the expectation that

one will do so provides the inducement for the other party to purchase the Option or enter into the

contract.  Here, plaintiff alleges in his complaint that "[h]e notified Margo at all times of his

intention to exercise his rights under the SOA in the event of his resignation and was led to believe

by Margo that his resignation would, and could not be treated as a dismissal for any purposes..."

See Amended Complaint at ¶ 11.  Later, plaintiff alleges that his resignation was treated as a

dismissal.  Because averments are to be taken as true, the plaintiff's contention that he was "led to

believe" his resignation would not be treated as a dismissal on its face alone has met the

requirements set out under the standard above for a 12(b)(6) motion to dismiss.

        The second point of analysis relates to the "in connection with" element of fraud.  The "in

connection with" element requires "some nexus" between the deceit and a securities transaction.

See SEC v. Clark, 915 F. 2d 439, 449 (9th Cir. 1990); see also Abrams v. Oppenheimer Gov't Sec.,

Inc., 737 F. 2d 582, 593 (7th Cir. 1984).  This nexus does not necessarily need to be a "direct and

close relationship".  Brown v. Ivie, 661 F. 2d 62, 65 (5th Cir. 1981).

        Here, plaintiff simply alleges that if it were not for the false or misleading statements of the

codefendants he would not have purchased or contracted for the SOA. See Amended Complaint at

¶ 23 (wherein plaintiff avers that he always "[s] aw the compensation granted to him under the 1998

Plan as an integral part of his total compensation" and "[i]t was part of the compensation package

offered to Mr. Rodríguez in a letter dated February 9, 2001 signed by Mr. Spector.").  By defendants

signing the compensation package (including the SOA) and presenting it to plaintiff as a biding

contract they have unquestionably met the "in connection with" requirement.  If defendants never

intended to honor the agreement, which is what plaintiff alleges, and, if the SOA is to be considered

a security, then plaintiff's averments on their face are enough to satisfy and overcome the standards

set out for lack of subject matter jurisdiction as they are to be taken as true.

        Third, this Court must decide whether the alleged fraud relates to the "sale or purchase of

a security".  As stated earlier, the question as to whether a SOA in the plaintiff's employment

**CIVIL NO. 03-2128 (PG)**                    6

contract is a security must be answered in plaintiff's favor at this juncture.[9]

The codefendants fourth and final contention with respect to the plaintiff's securities fraud allegation is whether there has been intent to deceive, manipulate, or defraud ("scienter"). To survive a motion to dismiss, the factual inference of scienter must be more than just reasonable, but strong, and specify each statement alleged to have been misleading. Greebel v. FTP Software, Inc., 194 F. 3d 185-196 (1st Cir. 1999). In addition, the reasons why the statements are misleading must also be stated with particularity with respect to time, place, and content of each alleged false representation. Id. Here, the plaintiff has met this standard by providing the time, place, date and content of the alleged misrepresentation. Plaintiff specifically refers to the February 9, 2001 letter, signed by Mr. Spector in which he is offered the Option. See Amended Complaint at ¶ 25. He also specifically refers to the SOA, dated March 2, 2001, which contains the promise that in the event of his resignation the full Option would vest. See Amended Complaint at ¶ 2 and 30.

**B. Jurisdictional Basis Under COBRA**

In the instant motion, co-defendants assert that plaintiff's COBRA claim is moot thereby requiring dismissal. The general purpose of COBRA is to provide an employee with the option of electing continuation of coverage under the employer's health plan after the occurrence of a "qualifying event" which would otherwise end an employee's health insurance coverage. See 29 U.S.C. § 1161 (a). Generally, termination of employment satisfies the requirement of a qualifying event whether the termination is initiated by the employer or employee. Here, the specific dispute, at issue, is whether Margo notified plaintiff (as required) of the qualifying event, thereby causing plaintiff's claim to be moot because plaintiff had not timely responded to codefendants' notice as required by law.

Plaintiff alleges in the Amended Complaint that he did not receive the required timely COBRA notice. See Amended Complaint at 15. Because the disputes among the parties surrounding the notice requirement relate to discrepancies with respect to specific dates and whether

---

[9] See *supra* note 8.

**CIVIL NO**. **03-2128 (PG)**                                   7

the alleged notice provided was in fact proper this Court holds that such questions are not only

sufficiently pleaded but are also questions of fact that cannot yet be ruled on at this stage of the

proceedings.  Thus, codefendant's motion to dismiss with respect to the COBRA claim must also

be **DENIED**.

### C. Plaintiff's Supplemental Claims

The last issue for this Court to decide is whether plaintiff's supplemental claims should be

dismissed, and be heard and decided by the local courts of Puerto Rico.  Federal courts may decline

to exercise supplemental jurisdiction over local law claims if it has dismissed all claims against a

party over which it has jurisdiction, or if there are no other compelling reasons for exercising

supplemental jurisdiction.  See 28 U.S.C. § 1367(c)3) & (4).  In doing so, a District Court must take

into account the central concerns of "comity, judicial economy, convenience, fairness, and the like."

See Rodríguez v. Doral Mortgage Corp., 57 F. 3d 1168, 1177 (1st Cir. 1995); Vera-Lozano v.

International Broadcasting, 50 F. 3d 67, 70 (1st Cir. 1995); Newman v. Burgin, 930 F. 2d 955, 963-4

(1st Cir. 1991).  Here, because this Court has ruled that plaintiff's federal claims have merit at this

point of the proceeding, the only question remaining is whether there is no other compelling reason

for exercising supplemental jurisdiction.  Here, the SOA and employment contract were entered into

by the plaintiff and defendant.  Additionally, Margo acted in a dual capacity as employer and health

care plan administrator.  Therefore, all documents and witnesses surrounding events relevant to the

suit can and should be examined in one arena (the federal District Court) to ensure efficiency in

resolving this complex legal and factual scenario.  Therefore, in the interest of judicial economy and

convenience with respect to the parties and prospective witnesses this Court holds supplemental

jurisdiction to be legitimate at the time.

### IV.  Conclusion

**WHEREFORE**, based on the above the Court hereby **RECOMMENDS** that the

defendants' motion to dismiss (Docket No. 42) be **DENIED**.[10]

Under the provisions of Rule 72(d), Local Rules, District of Puerto Rico, any party who

---

[10]  Again, the Court stresses that this ruling in no way bars defendants from prevailing in
their defenses at a latter stage of this case, once discovery has been conducted.

**CIVIL NO**. **03-2128 (PG)**                     8

objects to this report and recommendation must file a written objection thereto with the Clerk of the

Court within ten (10) days of the party's receipt of this report and recommendation.  The written

objections must specifically identify the portion of the recommendation, or report to which objection

is made and the basis for such objections.  Failure to comply with this rule precludes further

appellate review.  See Thomas v. Arn, 474 U.S. 140, 155 (1985), reh'g denied, 474 U.S. 1111(1986);

Davet v. Maccorone, 973 F.2d 22, 30-31 (1st Cir. 1992).

        **SO RECOMMENDED.**

        In San Juan, Puerto Rico, this 29th day of September, 2004.


                                                    S/Gustavo A. Gelpí
                                            **GUSTAVO A. GELPI**
                                            United States Magistrate-Judge